We'll hear the first case, United States v. Rodriguez. Good morning, honors. On behalf of Mr. Rodriguez, we're asking for acquittal on the three counts of conviction. I'm going to start with the drug conspiracy count. As your honor is aware from the brief, there's a lot of separate argument on the gun count, right? Correct. That's just if, if, if the first, if your first argument prevails, then that would prevail. Exactly, your honor. Thank you. Um, in terms of the drug conspiracy count, obviously we detailed all the things that the government does, does not have, but your inquiry is going to focus on what does the government have and does that rise to a level sufficient to support the conviction? Um, I break it into following categories. We have the evidence of what the government in fact actually saw. So you have Mr. Rodriguez at two 49 Concord road. You have him walking out with a white box. You have him getting in the car with Deasis and you have communications between Deasis. So you have that chunk of what the government saw. We know that's not enough to support the drug conspiracy conviction because we know Deasis himself got acquitted through rule 29 on those facts and more. So then the evidence pertaining to the, to the house, right? And so he, he apparently was involved with that. Um, because, uh, Ruiz was, um, although she rented the home, he was on the lease as his phone number. She was apparently a front. Apparently, I mean the jury could have inferred that he, she was just his front person on this and that, and that, uh, then, uh, and, and, and that he, he then, you know, worked or he got, he's, he's tied to putting in the furniture, putting in the Comcast, putting in the, uh, utilities. So your honor, there is no question that there's facts supporting a connection between Mr. Rodriguez and the house and you've identified them, which is, um, setting up the Verizon ordering furniture, um, the alternate number on the, on the water, alternate number on the lease. Um, and I think those are the sum total of facts in which if 40 kilos of drugs were found in, in, in, in the basement, right? Correct. And, uh, with a gun next to them. Um, now what about Ortiz's testimony? Uh, why isn't that, uh, doesn't that tie him in? That sale was during the time of the, of the, um, alleged conspiracy. But in addition, I, there is evidence that, uh, the drugs in the cabinet, uh, were wrapped or somehow marked with red on them in one way or another. And that's what Ortiz testified to. So Ortiz saw in his, in his, with his, when he, when he looked into the, this, looked at the drugs that were available in the other house at the time of the sale. Right. And, and so Ortiz, your honor, um, clearly my client didn't get charged with the criminal conduct of distribution to Ortiz. So in order for that to fit in, it's gotta be uncharged criminal, uh, conduct that fits within the test for being part of this conspiracy. Well, well, why, why doesn't it fit? I mean, it's, it's, uh, you've got, uh, cocaine that's packaged in, uh, in, uh, red tape, the same kind of tape that, uh, the cocaine that was found in the, uh, in the, in the, in the, at 249 Concord Road. Our position in terms of why it doesn't fit, your honor, is, um, so Ortiz doesn't, Ortiz has never been to 249 Concord Road, doesn't know Deasis, doesn't know Para, all those facts that distinguish it. The only two, I would say the only two things that potentially connected to your honor that, um, the government can rely upon is that there is some red tape on the packaging and there's a mention of a Mexican being the source. And if that's enough to make the leap between those drugs being part of the conspiracy, we submit they're not. I mean, the fact that a Mexican may be the source of the drugs is a pretty broad ranged, uh, leap in terms of, even the Mexican aside, the, we've got the drugs in red tape, which is consistent with the drugs that were found trafficking in the house, which seems to suggest some link to conspiracy. What occurs to me, and I understand that whether these are arguments to the jury, and the question is whether you can make a reasonable inference. What occurs to me first is, okay, we think of heroin cases and they got a certain indicia, they've got a certain number, they got a certain packaging, et cetera. The notion that there's some red on some cellophane that somehow makes that a sufficient basis for leaping from those drugs over at Edison Ave to 249 Concord a that's a leap. Um, I understand that. But, but, but, but I think what they're talking about, Judge Walker's mentioned and what Chief Judge Katzmann has mentioned is the fact that it's not just that it's all of the cumulative effect of all of these, all of these different facts that the jury could infer that Mr. Rodriguez was involved in the drug conspiracy. So I understand, uh, obviously they get to rely on all the evidence and parceling it out. It's not whether one, one, one, or one, but we have to look at this in the light most favorable to the government at this stage. And this court has been good about looking closely at conspiracy cases, uh, in terms of here, we've got a very finite period of time. We've got two bases for leaping. We've got the connections to the house and we've got what Ortiz says. And the question is whether those are sufficient to make the leap and the connections to the house. There's zero evidence my guy was ever downstairs. I mean, there is none of that because the government didn't decide like, we're going to go ahead and go. No, then you can add the money in after you, after you reach those conclusions because the money then the jury could infer were proceeds of the conspiracy. And he was involved in that. And there's, there's direct testimony of that part. And what we have is Dias is getting acquitted on the basis of the money. Um, and, and for my, our argument is that, um, in order to connect him to the drugs, either he's got to have a sufficient possessory or legal interest there to effectively attribute constructive knowledge of what's going on downstairs. He's not on the lease. He's a friend of the tenant, a friend. I mean, I think that's an equally reasonable inference. Um, and then when you are dealing with a circumstantial evidence and whether they equally weigh and if they both support equal inferences of guilt or not guilt, our position is acquittal on that. Why don't you go to the other one? Because I think in my view, that's a stronger case that you can make about the purpose of the movement of the money. I certainly agree. It's stronger. I kind of need to win both in order to get him some effective relief. But in terms of the money laundering, your honor, yes, our position is there's no why, you know, there's no evidence sufficient to support a why. In other words, the fact that it's concealed in the car, uh, or in the, in the, in the compartment, uh, and the fact that it's wrapped in a certain way that hides its nature, that hides that it's money or it's put in boxes, uh, is, is, is not, not relevant to the question of concealment. Sure. You can transport money in a concealed way, but the question is, is it for the purpose of concealing the proceeds of a, of a drug eventually? And your, your argument all along, I'm giving the other side a preview of my problem. Uh, your part argument all along is there's no indication about what this money was going to be used for, how it's going to be, what was going to happen to it afterwards. Correct. I mean, the inferences are at least equal, if not more in favor of the fact that this money is going back to whoever it's owed to as opposed to something else. So you have a difference under QALAR between transport for purposes of concealing and concealing for purposes of transport. And so I asked the why, the government went ahead and responded in its brief and they identified three facts. They identified the QALAR fact, which is that it's wrapped in a way that is concealed. Um, it's sent from a drug house and it's sent in installments. And I listened to those three and go, okay, what rational inference am I supposed to take from that? Is that really sufficient to go ahead and support the notion that it's money laundering? So yes, our position is that they haven't proven the why. Paying your drug supplier is not money laundering. Correct. Thank you. Um, if no further questions, I'll wait for rebuttal. Thank you. Why don't you address that point? Yes, Your Honor. Good morning. Uh, uh, Judge, I think the difference between QALAR and in this case is that in, in this case, at least there is some, an overwhelming amount of addition that the, that the defendant knew that the proceeds were drug proceeds. Fine. Um, and in this case as well, there was, um, testimony from the undercover that he was at least called for the purposes of, you know, moving money. So those are two, I think, key distinguishing facts. How does that get you to money laundering when it could be just a payoff, a pay, a moving the money to some, for somebody to take it from, to A to B and B happens to be, um, on I, I think the jury can draw the inference based on the undercover's testimony, uh, of what he was, what he was there for at least. Um, as well as the inference that there is a lot of money here. There's a lot of drugs. There was no discussion about depositing it in an offshore account or buying a business with it that then could be sold or, uh, using it to, to finance a, a house or anything of that sort. That is true, Judge. And, and, and also the, the, the testimony of the DEA agent seemed to be rather vague and he basically said, this is money laundering. I know it's money laundering. And he used a term, but there was really no explanation clearly of, of what he thought money laundering is or what, where the money was going. So, uh, so what was being laundered? How was it being laundered by being concealed in this car and being brought to someplace else? I understand the point, Judge. I mean, I think that even though there was no discussion as to, before the jury as to the laundering process, um, I think the jury can infer that because the undercover where was there acting as a launderer, um, with the knowledge that or with the evidence before the jury, that Rodriguez was not a minor player in this conspiracy. But I guess calling me, he may have been there as a launderer, but if he, if it's not clear what he's doing, I'm not sure how we call him a launderer. I believe the jury can infer from the fact that, that Rodriguez was not a minor player in this conspiracy. That sounds more like speculation to me. It seems like a jury would have to speculate that some laundering is going on, that money's being moved and the money is being moved for some purpose. We don't know what the purpose is. This so-called launderer doesn't tell us what the purpose is. I'm, it seems the jury would have to speculate that the money would be, once it got to the other end, would be laundered, but the jury wouldn't know. The jury would be saying, no, they're moving money from A to B. I mean, other than the jury knowing that money was moved from point A to point B, what else does the jury know about what's going to happen with the money with respect to the movement? There was no evidence as to what would happen. So you're, you seem to be a lot, he's a launderer without a laundry. You seem to be saying, just listening to you, that any time you physically move drug proceeds away from a stash of, someone who does that, moves a stash of drugs away from a particular location, does so with the purposes of concealing the funds and therefore commits money laundering. And that, that's not our law, is it? No, it's not, Judge. But that's, it seems to be what you're saying, because in response to the questions from both Judge Walker and Judge Bolden, you point to no evidence that supports money laundering. All you're saying is it could be inferred, but when you're asked specifically by both of the judges for more, you don't have anything more. There was no testimony as to what the money, what was going to happen with the money. That is correct. Again, the distinguishing facts between Quayler and this case, we would argue, Judge, is that given Rodriguez's role in the conspiracy, it was not unreasonable for the jury to infer that he was moving the money for the purposes of concealing it and giving that. So if you lose on that count, your adversary says it's a Pyrrhic victory for him because he's not going to be able to help his client much. He wants to help his client by getting the drug conspiracy overturned. And would you like to say anything about that argument that he's made? Conspiracy count one. Yes, Judge. I mean, Judge, I think because when viewed in totality, the evidence, I think, overwhelmingly established and was sufficient for the jury to conclude beyond a reasonable doubt that the appellant conspired to traffic narcotics. I think . . . You'll agree that this was an unusual investigation. It basically was a one-day investigation. The defendant was stopped with the money and also turned other money over to the undercover prior to that, but beyond that, that was it in terms of the investigation. Then there was the search and the house and then Ortiz's testimony, which came in later. Yes. The jury could have found, I guess, that Ortiz was selling drugs, had received drugs from a . . . or that the defendant had received drugs from somebody else, I suppose, at that point, not tied to the conspiracy charge. But I guess the inference could go either way on that. It could. I think the inference, though, Judge, strongly supports . . . Because of the tape. Because of the tape, because of the fact that he is on the lease. I think the jury can reasonably infer that Karen Ruiz was a cover for him. There is sufficient and overwhelming indicia linking him to setting up that stash house. What about the . . . Ortiz's testimony about the October 2012 sale? That takes place . . . the sale takes place before, right, any of the other actions that the alleged co-conspirators took? Yes, it does. And I think the jury can infer that as they were setting up the stash house, they need a place to stash the cocaine. And that the natural inference that the jury can reach is that Rodriguez had the cocaine in his possession in October. They set up the stash house. They get it ready. They move the cocaine, the same cocaine that's wrapped in the red tape that comes from the Mexican supplier. They move that into the stash house at 249 Concord Road. And I think that is a natural and logical inference that the jury could ever reach. You look at, as I understand it, you make the argument that Rodriguez possessed thousands of dollars in cash. And that's evidence that he knew that the conspiracy was ongoing involving a controlled substance. In our prior cases, our cases talk about possession of cash or something like 120,000, far more than the thousands in this case. Are there any other cases that you can point to that suggest cases where the defendant had just a few thousand dollars as support? Not off the top of my head, Judge, but I think not only is the fact that that's one of many indicia of his role in this conspiracy. I would stress to the Court that that $6,000 deposit that was made at a Wells Fargo bank was made, is further indicia, I believe, of the charged conspiracy, particularly with Tectogama's power. And, in fact, could support a money laundering conviction if the jury perhaps had thought, you know, if the jury considered it. But that money, that $6,000 deposit, was deposited into a Wells Fargo bank on October 17th of 2012, in the name of not Angelo Rodriguez. He had the receipt for that deposit when he was arrested two weeks later. On October 17th, the deposit was made. On October 17th, Tectogama's power flew out from New York City to Los Angeles. On October 18th, the very next day, $6,000 starts to be withdrawn from that account. The natural inference is that, the jury could have reached, is that that's Tectogama's power. That's his payment. That $6,000 that was put into someone else's account. And then he went to Los Angeles and took the money out. And I believe that, although the volume, the amount of money may not be substantial, in terms of the, what this Court has considered to be proof of knowledge and participation in the drug trafficking conspiracy. I think that fact further demonstrates that Rodriguez and Gamma's power were conspiring with each other and that they, that Gamma's power, and that Rodriguez knew and intended to further the conspiracy by his actions. On the red tape issue, Mr. McLaughlin raises a point that the red tape is far more common and not as distinctive as often is in terms of identifying, as an identifying marker of sort of the drugs themselves in terms of particular packaging. I mean, when you say that, and I guess the part of the question is, is the tape that they wrapped it up, is that distinctive enough of a quality for, for, for it to be considered something that links it to this current conspiracy? Well, I think Judge, not only is it just the red tape, but again, it goes back to, it's, it's the red tape. It's the, the fact that Rodriguez said my supplier is Mexican, which I think the jury could have easily found, concluded based on the evidence that was presented. Yeah. I mean, I have to admit, I'm a little troubled by that. I mean, the, the fact that the supplier is, I mean, Mexican, I can't, I assume, it makes it seems as if there's only one possible Mexican supplier that could possibly be in the country, which is not to say that there are lots of them, but, but it, it seems like that's a sufficiently narrow, I mean, broad character. I mean, on the one hand, the red tape may seem specific, but it seems general, but the, the, the particular ethnic identity seems general as well. Agreed, Judge. But I think that fact, along with the fact that Ortiz said he saw the bricks of cocaine in, with Rodriguez, in Rodriguez's possession, the argument I think would be that Rodriguez, he wasn't part of this charge conspiracy, he was part of some other drug conspiracy at the same time, ongoing with another 40 kilos of cocaine. I think the jury could reasonably reject that argument. It wasn't made, but by the defense, it wasn't a defense to this case. But I think the jury could have reasonably rejected what is, what is in many respects the, I'm the unluckiest guy in the world argument. You know, and so I think the jury was able to, if they had considered it, reject that argument. Thank you. Thank you. Thank you, Your Honors. Just briefly, in terms of the money laundering, to the extent that there's any reliance on what the undercover testified to, I did clarify and I did double check while sitting there that his testimony in terms of money laundering, use of the word money laundering, moving, none of that was offered for the truth. That was by way of background and was specifically limited. So it couldn't substantively support the money laundering. In terms of, one of Your Honors indicated, I mean, this is a strange investigation. It is a very time constrained investigation. Obviously law enforcement could have decided to do something else. They could have continued to surveil, et cetera. They didn't. So they are stuck with what they have and what they have is different than what they typically have. And is that enough? And a lot of it rides on Ortiz. And the question is whether you can tie Ortiz to this conspiracy. And you know, I go to the hardware store and there's red tape, blue tape, silver tape, camo tape these days. You know, there's a lot of kinds of tape. And the notion that somehow tape is going to be enough to say this is the same corpus of drugs and same involved drugs as what you end up ultimately finding a month later is a speculative jump and we submit to speculative. Thank you. Thank you. Thank you both for your arguments. The court will reserve decision.